Filed 6/22/23  Marriage of Bassi CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ROBERT ALAN BASSI and SUSAN HAZLETT BASSI. | H046284 (Santa Clara County Super. Ct. No. 2012-6-FL009065) |
| ROBERT ALAN BASSI, Respondent, v. SUSAN HAZLETT BASSI, Appellant. | |

THE COURT:[*]

Respondent Robert Bassi filed a petition for dissolution on September 18, 2012, involving his spouse appellant Susan Bassi.[1]  After protracted and contentious proceedings, judgment was entered on August 28, 2018.

Susan in her appeal from the judgment does not challenge specific orders which were entered by several judicial officers.  Nor does she make a specific challenge to the

---

[*] Before Bamattre-Manoukian, Acting P.J., Danner, J., and Wilson, J.

[1] We refer to the parties by their first names for convenience and clarity; we mean no disrespect in doing so.  (See *Rubenstein v. Rubenstein* (2002) 81 Cal.App.4th 1131, 1136, fn. 1.)

judgment, which was rendered by a judicial officer after an 11-day trial and the issuance of a 31-page statement of decision. Rather, Susan asserts that the judgment should be reversed because it was based upon recommendations and orders made by a referee, Nat Hales, Jr. (Referee or Hales), that she contends were unlawful. Hales was appointed by the trial court pursuant to the parties' stipulation. Susan challenges the Referee's actions in this case based upon, inter alia, his failure to make written disclosures concerning other matters in which he and Robert's counsel were participants; his alleged breach of ethical obligations; and his entry of orders that were adverse to her and were favorable to Robert. Susan contends that the Referee's "void orders and decisions are at the heart of the judgment of dissolution," and that therefore reversal of the judgment is required.

Finding no error, we will affirm the judgment.

## I.    PROCEDURAL HISTORY[2]

On September 18, 2012, Robert, as a self-represented litigant, filed a petition for dissolution. The petition alleged that the parties had been married for 23 years and they had one child who was a minor (as well as two adult children). The record discloses that the parties owned two residential properties: on Los Gatos Almaden Road in Los Gatos (the Los Gatos property), and on Hecker Pass Road in Gilroy (the Gilroy property). On

---

[2] Susan presents an incomplete discussion of the procedural history of this lengthy case in her opening brief and fails to discuss in any fashion the judgment that was entered after an 11-day trial. Her limited procedural discussion is also missing a number of citations to the record as required by rule 8.204(a)(1)(C) of the California Rules of Court. (Hereafter, all rules references are to the California Rules of Court.) Our recitation of the relevant procedural history is hampered by Susan's failure to provide an adequate discussion in her appellate briefs. This court is "not required to make an independent, unassisted study of the record in search of error or grounds to challenge a trial court's action. We are entitled to the assistance of counsel." (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 (*Ellenberger*).) Additionally, the appellate record is not complete. We nonetheless attempt to present a summary of the procedural background for the six-year history of this case.

September 30, 2013, Robert became represented by counsel, Bradford Baugh, who represented Robert through the entry of judgment in August 2018.

Susan, as a self-represented litigant, filed a response to the petition on October 3, 2012. Susan became represented by counsel in the proceeding on September 19, 2013. She was unrepresented for a period of time in the proceedings, but she was represented by counsel during significant hearings and trials discussed below—including those that resulted in the orders and judgments of (a) May 26, 2016 (order after four-day hearing on request for attorney fees and order imposing sanctions against Susan), (b) August 31, 2016 (order after three-day hearing finding Susan to be a vexatious litigant and denying her request for pendente lite attorney fees), (c) July 11, 2017 (order imposing sanctions against Susan), (d) October 31, 2017 (order, inter alia, finding that Susan had breached her fiduciary duties to Robert, imposing sanctions against Susan, and requiring her to account for unapproved withdrawals from her retirement accounts), (e) December 19, 2017 (order after two-day contested hearing to determine date of parties' separation), (f) January 5, 2018 (order determining date of valuation of family businesses), and (g) August 28, 2018 (judgment on reserved issues following an 11-day trial).[3]

_____

[3] Because of prior appeals and petitions for writ of mandate, this court has some familiarity with this family law proceeding. Robert has filed a request for judicial notice of the existence of eight prior proceedings initiated by Susan which were pending while the matter was being litigated below. Susan has not opposed the request. We will treat Robert's request as one for judicial notice of this court's appeals and writ proceedings related to the instant appeal, exclusive of the appellate record filed in any such appeals, and we grant the request. (See *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 723, fn. 3 [appellate court may take judicial notice of its files and prior opinions related to current appeal].) We take judicial notice of the appeals and writ proceedings in the following matters previously pending in this court: *Bassi v. Bassi*, H044010 (appeal dismissed by order, Jan. 10, 2018 [failure to procure appellate record]); *Bassi v. Bassi*, H044067 (appeal dismissed by order, Jan. 10, 2018 [failure to procure appellate record]); *Bassi v. Bassi*, H044969 (appeal dismissed by order, Mar. 7, 2018 [failure to procure appellate record]); *Bassi v. Bassi*, H045258 (appeal dismissed by order, Oct. 22, 2019 [appeal from nonappealable order]); *Bassi v. Superior Court*, H044437 (writ petition (continued)

3

### A. Pretrial Proceedings (December 2013-October 2017)

#### 1. *Generally*

On October 11, 2017, the case was assigned to Judge Takaichi for all purposes, including trial.

Between December 12, 2013, and October 11, 2017, there were nearly 60 formal orders entered by five judicial officers.[4] These orders, generally stated, concerned (1) the Gilroy property and its ultimate sale and the disposition of the proceeds as ordered by the court; (2) the Los Gatos property and its ultimate sale and the disposition of the proceeds as ordered by the court; (3) issues and rulings concerning the accountant, James Butera, appointed by the court pursuant to Evidence Code section 730; (4) issues and rulings concerning the Referee, Hales, appointed by the court pursuant to stipulation pursuant to Code of Civil Procedure sections 638 and 639;[5] (5) custody, visitation, and support issues concerning the parties' minor child; (6) issues concerning the community businesses, California Seed Productions, Inc. (CSP) and California Seeds, Inc. (CSI); (7) the parties' requests for attorney fees and for sanctions; (8) Robert's motion that Susan be declared a vexatious litigant; and (9) case management, including identifying and scheduling numerous requests for orders filed by the parties. Several of these orders that were noteworthy and/or arose out of lengthy proceedings are discussed below.[6]

---

denied, Jul. 5, 2017); *Bassi v. Superior Court*, H044613 (writ petition denied, Jul. 5, 2017); *Bassi v. Superior Court*, H045018 (writ petition denied, Dec. 28, 2017). Further, on our own motion, we take judicial notice of a writ proceeding initiated by Susan in this case after the filing of the instant appeal. (See *Bassi v. Superior Court,* H050671 [writ petition denied, Mar. 1, 2023].)

[4] The nearly 60 orders as indicated do not include recommendations and orders made by the Referee, discussed *post*. The figure also does not address court orders setting hearing dates for requests for orders, including numerous (more than 40) requests for ex parte orders made by Susan.

[5] Further unspecified statutory references are to the Code of Civil Procedure.

[6] We do not include here the orders and recommendations of the Referee, which we discuss, along with the orders appointing the Referee, *post*.

4

### 2.    *Attorney Fees and Sanctions Order (May 26, 2016)*

On May 26, 2016, the court issued a lengthy order following a four-day hearing that had commenced on March 1.[7]  The court addressed and decided four matters.

First, the court observed that Susan had "sought to have the court in effect reconsider prior decisions made in the Family Court regarding a multitude of issues." The court denied reconsideration of the prior orders of the court.

Second, the court considered Susan's request for attorney fees of $250,000 under Family Code section 2030.  It observed that as a result of a December 2015 order, each party was to receive $15,000 from the family business.  It was anticipated at that time that the Gilroy property would be sold, thereby providing additional funds to the parties.  The court observed, however, that the sale had been delayed, and that the "[e]vidence at the hearing strongly suggested that this was a result of [Susan's] failure to cooperate in the listing of the property."  As a result, the only potential source of additional funds for Susan's attorney fee request was the family business.  The court denied Susan's request for pendente lite attorney fees.  It found that (a) the family business did not have additional assets to fund the attorney fee request; (b) the business was being run prudently by Robert; (c) in assessing the need of the moving party, "much of [Susan's] need for attorney's fees was based upon the vexatious or unnecessary motions and claims" she had filed and asserted; and (d) there was "no disparity in the parties['] ability to access funds to retain legal counsel and . . . neither party [was] able to pay the legal fees of both parties."

Third, Susan's request for attorney fees as sanctions (Fam. Code, § 271) was denied.  The court observed that while there were some delays in providing banking records of the family business to Susan, she "contributed to the problems in the discovery by being in contact with a competitor[,] thereby requiring a protective order."  The court

---

[7] Susan was represented by counsel at the hearing.

5

found that there had been no violation of Family Code section 271 that warranted an award of attorney fees.

Fourth, Robert's request for attorney fees as sanctions (Fam. Code, § 271) was granted in the amount of $120,000. The court based this order upon findings, inter alia, that Susan (1) failed to cooperate in listing the Gilroy property for sale, and she filed three unsuccessful motions to reconsider the order to sell the property; (2) made "repetitive and unnecessary motions and request[s]," as illustrated by the court's December 2, 2015 order in which none of the requests by Susan were granted and "[m]ost all were without any merit whatsoever"; (3) was "responsible for startling and unnecessary personal attacks on individuals involved in this case" that were without justification; (4) had filed multiple motions involving the Referee seeking "to have him relieved or his fees limited," which had all been denied; (5) reported accountant Butera to the Board of Accountancy, causing him to withdraw from the case, thereby increasing the cost of the litigation; (6) reported the family's accountant, Doglione, to the Board of Accountancy, causing him to withdraw as the accountant for the family's business and personal accounts; (7) threatened to report Robert's accounting expert, Glenn; (8) engaged in numerous other efforts to delay the case; and (9) in many instances improperly handled community assets.

### 3. *Vexatious Litigant Order (August 31, 2016)*

After a three-day hearing that commenced on May 26, 2016, the court, inter alia, granted Robert's motion to declare Susan a vexatious litigant under section 391.7.[8] The order of August 31, 2016, was accompanied by a lengthy statement of decision by the court. The court detailed evidence from hearings in 2015 occurring on April 27, June 11, September 22, October 15, November 18, that demonstrated that Susan had brought motions that were denied because they (a) had no basis in law, (b) had no basis in law or

_____

[8] Susan was represented by counsel at the hearing.

fact, (c) concerned matters in which the court had previously ruled against her and were therefore barred by res judicata or collateral estoppel, and/or (d) were procedurally defective or untimely. The court concluded that "[t]he . . . undisputed record demonstrates that, in hearings over a period of just seven months, the Court denied twelve motions or requests specifically based on res judicata or on matters that were previously adjudicated and final, and three that had no basis in law or fact." The court thus concluded that "while representing herself, respondent repeatedly filed unmeritorious motions, pleadings, or other papers, and engaged in other frivolous tactics, within the meaning of Code of Civil Procedure section 391, subdivision (b)(3). . . . [Susan] in this case has persistently and repeatedly relitigated issues that the court has already decided, wasting the resources of the court and [Robert]." The court granted the motion and issued a prefiling order prohibiting her from filing any new litigation in California courts as a self-represented litigant without first obtaining leave of court (see § 391.7).

The court also granted Robert's motion and found that Susan had violated the court's protective order, finding Susan's testimony on the subject "not credible." But the court denied without prejudice the motion to require, as sanctions, that Susan post a bond to secure her attorney's access to confidential documents.

The court also addressed Susan's motion for pendente lite attorney fees (Fam. Code, § 2031) made at the hearing. After considering the statutory factors under Family Code sections 2030 and 2032, the court denied Susan's request for attorney fees.

### 4.    *Sanctions Orders*

In addition to the May 26, 2016 order imposing sanctions of $120,000 against Susan, there were several other instances between May 2016 and August 2017 in which

7

the court imposed sanctions against Susan.[9]  Additionally, on January 16, 2015, the Referee issued an order that Susan pay Robert attorney fees of $50,000 as sanctions (Fam. Code, § 271).

On May 3, 2016, the court ordered imposed discovery sanctions against Susan of $4,000.

On March 15, 2017, the court awarded Robert attorney fees ($4,500) and costs ($90) in connection with her unsuccessful motion to reconsider a prior order denying her request for joinder.  The court concluded that her motion was "frivolous" under section 128.5, and that it frustrated the policy of the law promoting settlement (Fam. Code, § 271).

On July 11, 2017, after a lengthy hearing, the court imposed sanctions against Susan totaling $23,233.  These sanctions consisted of the following awards of attorney fees payable to Robert as sanctions under Family Code section 271:  (a) $15,500 in connection with his motions to enforce orders concerning the sale of property; (b) $1,000 in connection with her having sold the community's pool membership; and (c) $4,389 in connection with a matter in which she had received community stock dividends from an Australian company.  The court also imposed discovery sanctions for three separate issues in the amounts of $1,000, $1,069, and $775, as well as an issue sanction concerning the valuation of the Los Gatos property's fair rental value.

On August 24, 2017, the court awarded Robert attorney fees of $3,190 as sanctions against Susan (Fam. Code, § 271), relating to a motion to enforce prior court orders and of $500, for her refusal to sign checks pursuant to a court order.[10]

---

[9] Additional orders in which the court imposed sanctions against Susan between October 2017 and the time judgment after trial was entered in August 2018 are discussed, *post*.

[10] There were also instances in which the court made orders impacting Susan financially as a result of her conduct in the proceedings.  For instance, in an order of (continued)

8

### B. Pretrial and Trial Proceedings (October 2017-August 2018)

#### 1. Pretrial: October 31, 2017 Order

The court issued an order on October 31, 2017, that addressed a number of matters.[11] The court found that Susan had received community stock sale proceeds and dividends concerning an Australian company, South Pacific Seeds, in the amounts of $64,668 and $22,357, respectively, for a total sum of $87,025. She deposited the sums into her bank account and paid no amount to Robert, notwithstanding a prior order that the parties were required to divide dividends. The court found that Susan had breached her fiduciary duties to Robert, warranting an award of $2,600 attorney fees to Robert as sanctions (Fam Code, §§ 271, 1101, subd. (g)) in addition to an award of one-half the proceeds received by Susan.

The court had previously ordered on July 11, 2017, that Susan provide an accounting of all withdrawals she had made from retirement plans and IRAs. Susan acknowledged that she had withdrawn funds from an IRA but stated she did not know the specifics. The court found that she had not complied with the prior order or the Automatic Temporary Restraining Orders (ATRO). The court found further that Robert was entitled to attorney fees as sanctions (Fam Code, § 271) from Susan, and it reserved determination of the amount of the award for a future hearing.

An additional finding of the court was that Susan had modified the existing loan against the Los Gatos property, and that she had received $43,960 from that modification. The court ordered Susan to pay Robert $21,980 as an equalizing payment.

In a prior order (July 11, 2017), Susan was ordered to pay Robert $99,295 as total sanctions and other sums. Susan did not pay the sum, and Robert requested that accrued

---

October 21, 2016 (hearing September 29) the court ordered that Susan would "be charged out of any proceeds of [the sale of the] Gilroy [property] as a cost to her for frustration of the court's orders" the total sum of $16,391.

[11] Susan was represented by counsel at the hearing.

9

interest be assessed. The court ordered that $101,933 ($99,295 plus $2,638 interest) be paid to Robert from funds held in the trust account of Robert's counsel.

The court ordered that Susan pay Robert attorney fees of $900 as sanctions (Fam. Code, § 271) for her unexcused failure to appear at hearing at a July 13, 2017 hearing.

Lastly, the court imposed discovery sanctions against Susan of $2,040 (under § 2031.300).

### 2. *Pretrial: December 19, 2017*

The court, after a two-day hearing, found that the date of separation of the parties was September 1, 2010, and it entered judgment on that finding on December 19, 2017.[12]

### 3. *Pretrial: January 5, 2018*

After a hearing, the court issued an order on January 5, 2018, concerning the valuation date to be used for the family businesses, CSP and CSI. The court, finding that Robert had exclusively operated the businesses after the date of separation, concluded that the businesses had increased in value since the parties' separation and that this increase was "primarily a reflection of and attributable to [Robert's] post separation, personal efforts." The court therefore, finding good cause, ordered that the determination of the value of the businesses was to be as of the date of the parties' separation, September 1, 2010.

### 4. *Pretrial: April 13, 2018*

On April 13, 2018, the court ordered Susan to pay discovery sanctions of $1,630.

### 5. *Pretrial: June 13, 2018*

The court on June 13, 2018, entered a judgment, status only, in which the parties' marital status was terminated, effective June 4, 2018.

---

[12] Susan was represented by counsel at the two-day hearing.

### 6.     Trial and Final Judgment:  August 28, 2018

The court conducted an 11-day trial, commencing May 21, and concluding June 5, 2018.[13]  The court issued its lengthy statement of decision on August 22, 2018.  A final judgment was entered on August 28, 2018.  The court's decision as stated in the statement of decision and judgment, and as detailed below, addressed (1) the division of community assets, (2) confirmation of the sale of the Gilroy and Los Gatos properties, (3) recitation of prior sanctions orders, (4) identification of separate property, (5) the parties' respective claims for reimbursement, (6) permanent spousal support, (7) Susan's request for attorney fees under Family Code section 2020, (8) Susan's request for attorney fees as sanctions under Family Code section 271, (9) Robert's request for attorney fees as sanctions under Family Code section 271, and (10) a reconciliation and determination of the net amount owing to one party (Robert) of $276,145.

The court determined the values of the businesses, CSI and CSP, at $305,000 and $310,000, respectively, using the alternative valuation date of September 1, 2010.  Robert was awarded all community interest in those businesses.  Robert was also awarded four IRA accounts having a total value of $153,178; a boat valued at $6,000; a health saving account valued at $1,485; and community furniture in his possession at a value of $0.

Susan was awarded the business, Bassi Productions, Inc., valued at $0.  She was also awarded a 401k account and an IRA with a total value as of the alternative valuation date (i.e., date of separation, September 1, 2010) of $60,386.[14]  Susan was charged with receipt of funds of $32 from a miscellaneous account.  The court further awarded Susan a Honda vehicle valued at $7,000, and community furniture in her possession valued at $0.

---

[13] Susan was represented by two attorneys at the trial.

[14] The court determined that Susan had withdrawn sums from these accounts, and that she had failed to account for the funds or to present evidence regarding post-separation contributions or the balances of the accounts at trial.  The court therefore granted Robert's request for an alternative valuation date of the accounts.

Additionally, the court confirmed the sale of the Gilroy property and the Los Gatos property. Pursuant to a prior order of May 22, 2017, the total proceeds distributable to the community from those sales were $726,283 (or a presumptive share for each party of $363,141). The prior order itemized the amounts charged against each party. The total amount chargeable against Susan was $402,855, which exceeded by $39,713 her presumptive share. Robert, after subtracting charges (including a $100,000 attorney fee advance), had a balance owing from his presumptive share of $190,157. Adding the excess amount owed by Susan to Robert's balance, the court concluded at trial that Robert was owed $229,871 from the proceeds of the sales. The court noted that a further sum, totaling $101,933, unrelated to the property sales, had been previously ordered payable by Susan to Robert.[15] Combining that amount with the $229,871 sum owed from the sales proceeds, Susan owed $331,804, exclusive of interest, to Robert from the prior orders.

The court also recited that, pursuant to three prior orders, additional sums, including sanctions, had been found to be due from Susan. The prior orders, discussed *ante*, were dated August 24, 2017 ($3,690 sanctions); October 31, 2017 ($74,449, including $3,540 sanctions); and April 13, 2018 ($1,630 sanctions).

The court also identified and confirmed separate property, including recognition of Robert's separate property interests in Daniel A. Bassi Properties, LP or The Daniel A. Bassi Trust, and in two specified retirement accounts.

Further, the court recognized and allocated the parties' reimbursement claims. The court found, based upon a report of the court appointed accountant, Butera—which was concurred in by an accounting expert who testified at trial—that Susan owed Robert

---

[15] This figure was derived from two orders. In an order dated July 11, 2017, the court found that Susan owed Robert a total of $99,295, which included sanctions of $23,733, discussed, *ante*. Second, in an order dated October 31, 2017, the court acknowledged Susan's obligation to Robert created by the prior order and added accrued interest of $2,638, for a total of $101,933.

a net reimbursement amount of $165,222 for the period of September 1, 2010 (date of separation) to December 31, 2013. The judgment included *Watts* charges[16] for the reasonable value of a party's post-separation exclusive use of community property, namely, charges for (1) Robert's exclusive occupancy of the Gilroy property from August 2011 to July 2013; (2) Susan's exclusive occupancy of the Gilroy property from November 2013 to September 2016; and (3) Susan's exclusive occupancy of the Los Gatos property from October 2010 to October 2016. The court also determined the respective parties' entitlement to *Epstein* credits[17] for a party's post-separation use of separate property for the benefit of the community. The court found that Robert and Susan were each entitled to *Epstein* credits in connection with payments related to the Los Gatos property. After reconciliation of *Watts* charges and *Epstein* credits, the court concluded that Susan owed a reimbursement to Robert of $97,280.

The court heard evidence concerning permanent spousal support including the testimony of a vocational expert, Tim Harper, who performed an assessment of Susan concerning, inter alia, her employment history, projected earning capacity, current marketable skills, and her employment efforts. Harper opined that a reasonable annual salary range, were Susan to seek conventional employment, would be $66,000 to $123,000. He testified that the documents Susan provided him during an April 2018 interview did not show "any income earned, any job searches, or any indication of efforts to obtain W-2 wage employment." The court concluded from Harper's testimony that Susan had "failed to make reasonable efforts to become self-supporting in a reasonable time." After conducting a detailed analysis of the factors specified in Family Code section 4320, the court ordered step-down spousal support payable to Susan as follows: (a) $4,000 per month beginning August 1, 2018, through July 2020; (b) $2,000 per month

---

[16] *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

[17] *In re Marriage of Epstein* (1979) 24 Cal.3d 76, superseded by statute on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 914.

beginning August 1, 2020, through July 2022; (c) $1,000 per month beginning August 1, 2022, through July 31, 2024, at which time support would be terminated.

Susan sought attorney fees and costs pursuant to Family Code sections 2020 and 2022. The request covered the period of September 2017 to May 2018, during which time she incurred fees and costs of over $240,000. The court conducted an extended analysis of factors relevant to the request. One factor it considered was Susan's ability to pay attorney fees. It stated that, although it could be inferred from the evidence that Susan did "not have income or assets to pay her current attorney fees[, t]he weight assigned to that inference [was] tempered by [Susan's] receipt of the benefit of $1,494,674 in distributions,[18] failure to become self-supporting within a reasonable time, and imputation of earning capacity." On the subject of the reasonableness of attorney fees, the court—having observed elsewhere in the statement of decision that Susan had paid at least $100,000 to her attorneys, but that over $1,200,000 in fees remained owing—concluded: "Although the amount received by each party as distributions was more than sufficient to cover the *reasonable* cost of the litigation, this case was extremely contentious and over[-]litigated. The evidence establishes that the extraordinary cost of the litigation is due to the conduct of [Susan] which included repeated re[-]litigation of adjudicated matters, failure to comply with court orders, frivolous conduct that [exacerbated] rather than resolved areas of disagreement[,] and a failure to cooperate in many fronts, all of which sustained the conflict and multiplied the overall expense." (Original italics.) The court ultimately held that Robert should pay Susan $40,000 toward her outstanding attorney fees, which were to be offset by sums owed by Susan to Robert.

---

[18] The court concluded elsewhere in its statement of decision that Susan had not "substantiate[d] where the funds [received by Susan, i.e., $1,494,674] are today or how the funds were expended," and that her failure to do so "suggest[ed her] mismanagement of distributions received."

14

The court addressed Susan's request for attorney fees as sanctions under Family Code section 271. It found that her request involved claims that had been previously heard and denied by the court and the prior rulings would not be reconsidered. The court considered Susan's claim for attorney fees under Family Code section 271 only as it related to an August 21, 2017 hearing, for which she "alleged eleven counts of misconduct of [Robert's] attorney." The court recited that during trial, it had granted Robert's motion to strike and exclude evidence as to nine of the counts. After submitting the request, the court granted the motion to strike and exclude evidence, and it denied Susan's request for sanctions.

The court addressed Robert's request for attorney fees as sanctions under Family Code section 271. The court ordered that Susan pay Robert attorney fees as sanctions in the total amount of $12,073, detailed as follows: $1,780 for Susan's withdrawal of money from "IRA/savings plan" accounts without "prior notice or disclosure" in violation of the ATRO; $9,793 for the cost of responding to two appeals by Susan that were dismissed by order of this court on January 10, 2018; and $500 under Family Code section 2107, subdivision (c) for Susan's failure to serve and file a final declaration of disclosure.[19] The court ordered that the sanctions would be offset against the award of $40,000 attorney fees to Susan.

The court summarized community property rulings, reimbursements, amounts payable by Susan to Robert under prior orders, and attorney fees and sanctions awards made after trial to conclude that there was a net sum due as an equalizing payment from Susan to Robert of $276,145.

---

[19] The court noted that Robert's motion for evidence sanctions due to Susan's willful failure to file and serve a final declaration of disclosure was partially granted during trial.

15

## II. DISCUSSION

### A. Noncompliant Appellate Briefs

The rules of appellate procedure include significant requirements for appellate briefs which, if not followed, make it difficult or impossible for an appellant to meet his or her burden "to affirmatively demonstrate error on the record before the court" to overcome the presumption of the correctness of the judgment. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) These requirements include the obligations to (1) develop arguments with analysis, (2) support arguments with citation to legal authority, (3) include citations to the appellate record for all factual and legal matters stated in the briefs, and (4) procure an adequate record from the trial court proceedings. A review of Susan's appellate briefs discloses that they are flawed in all four respects. These defects are of consequence because it is Susan's burden as appellant to establish error. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).)

Susan's opening brief is replete with instances in which she makes conclusory assertions that are unsupported by any analysis. A small sample of these generalized statements include the following: (1) "[t]he Judgment was largely based on decisions and orders of [the] Referee"; (2) a 2015 recommendation of the Referee "would become the fulcrum to routinely deny Appellant her rights and to malign her"; (3) "[w]ithout exception, the court adopted and entered [the Referee's] decisions, orders, and recommendations, which became basis for the final judgment of dissolution"; (4) "Hales proceeded to enter substantial and material orders and make decisions and recommendations that would eventually result in judgment against Appellant"; (5) "Appellant received no proceeds from sales of properties she owned during a 23-year marriage";[20] and (6) "[t]he court . . . [gave] weight to Hales' recommendations, resulting

_____

[20] In addition to this assertion being undeveloped, it is inaccurate. The court found that Robert and Susan were entitled to an equal division of the proceeds from the sales of (continued)

16

in orders and a final judgment which was [a] product of a conflicted referee that committed fraud on the court." An appellate court "need not consider . . . a perfunctory assertion [in a brief] unaccompanied by supporting argument. [Citation.]" (*People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8 (*Smith*).) As stated by one court, a "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the court will "treat the issue as abandoned." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Further, Susan makes a number of arguments in her appellate briefs without citation to legal authority. Examples include Susan's assertions that (1) the Referee had no jurisdiction in the proceedings; (2) the Referee's alleged lack of jurisdiction rendered the judgment void; (3) all of the Referee's orders were void; and (4) the Referee's alleged lack of disclosure of his "business dealings with [Robert's] counsel denied Appellant due process under California law." A party submitting an appellate brief is required to "support each point by argument and, if possible, by citation of authority." (Rule 8.204(a)(1)(B).) An appellate court has no obligation to "develop the appellants' arguments for them." (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 (*Dills*).) "[T]he failure to provide legal authorities to support arguments forfeits contentions of error. [Citations.]" (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 (*Ewald*); see also *Ellenberger*, *supra*, 30 Cal.App.4th at p. 948 ["[w]hen a brief fails to contain a legal argument with citation of authorities on the points made, we may 'treat any claimed error in the decision of the court . . . as waived or abandoned' "].)

Susan's appellate briefs contain a number of statements of specific factual and procedural matters upon which she bases her claim of error that are unsupported by

---

the Gilroy and Los Gatos properties. Susan, however, did not receive a net distribution of those proceeds because of prior distributions to her ($100,000 attorney fees) and prior orders.

citations to the appellate record. Susan's failure to include citations to the record in her appellate briefs constitutes a violation of rule 8.204(a)(1)(C), which requires that every brief "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407.) We will therefore disregard Susan's factual contentions and any references to procedural matters below for which she has failed to provide citations to the record. (See *Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 451.)

In addition, the party challenging the trial court's ruling has the burden of showing reversible error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) An appellant's failure to present an adequate record will result in the issue being resolved against appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 (*Maria P.*).) Susan, as appellant, has not fulfilled her obligation to procure an adequate record for the appeal. The appellate record does not include a transcript of proceedings that resulted in the issuance of a number of key orders and judgments, including the final judgment entered after an 11-day trial. To the extent that Susan's appellate challenge includes claims that the trial court erred with respect to the decisions made in orders for which there are no reporter's transcripts—including these three orders and the final judgment— those appellate claims must be resolved against her. (See *Maria P.*, *supra*, at pp. 1295-1296.)

Lastly, we note that Susan's reply brief contains argument on two issues not presented in her opening brief. Specifically, her reply brief contains a section, with citation to case authority not presented in her opening brief, asserting that she was denied due process. Susan argues that because the Referee had a "complete conflict of interest

that [made] him biased against [her]," there was therefore "no impartial judicial officer, the essence of due process denial."[21]  Additionally, Susan in her reply brief includes an extended argument, under a separate heading, concerning the trial court's alleged 2007 denial of access to her of the books and records of the community businesses, CSP and CSI, which occurred *after* the Referee's withdrawal from the case.  In contrast, Susan's opening brief mentions in passing—in her statement of facts that preceded her appellate argument—that she was denied access to the company books and records in the context of asserting that Hales *in 2014* denied such access.

The appellant may serve an optional reply brief.  (Rule 8.200(a)(3).)  However, the general rule is "that ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. . . ." ' [Citations.]"  (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10.)  As the California Supreme Court has explained, "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."  (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)  Matters that are raised by appellant for the first time in the reply brief are subject to a motion to strike.  (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1542.) We will, on our own motion, strike the portions of Susan's reply brief that contain arguments regarding alleged due process denial and alleged denial of access by her of the company books and records of the community businesses.

## B.    Challenge Based Upon Rulings and Conduct of Referee

The central position of Susan in this appeal is that the recommendations and orders of the Referee, Hales, were void, that these "void orders and decisions are at the

---

[21] In Susan's opening brief, she expressly indicated that she was *not* asserting a federal constitutional claim for violation of due process.  She *did* argue in a conclusory fashion in her opening brief that Hales's failure to make Referee Disclosures was a violation of her state due process rights.

heart of the judgment of dissolution," and that the judgment must therefore be reversed. Susan contends that Hales (1) never signed the stipulation and order of appointment as Referee; (2) never provided written disclosures at the time of his appointment (or at any later date) concerning any other cases involving Robert's counsel, Baugh, in which Hales acted as a referee; (3) would have revealed through this disclosure the existence of other such cases involving Baugh and Hales, including another dissolution proceeding filed in the Santa Clara County Superior Court, *In re Marriage of Brooks* (the *Brooks* case); and (4) issued recommendations and orders that involved matters that were beyond the scope of his appointment.[22]

In considering Susan's appellate challenge, we will first provide some procedural background concerning the Referee's appointment, orders and recommendations, and ultimate withdrawal from the proceedings. Second, we will discuss whether Susan's appellate challenge to the Referee's actions is procedurally barred because she sought his disqualification in the trial court, such request was denied, and she did not pursue her exclusive remedy to challenge that denial. Third, we will address whether—assuming

---

[22] Susan filed a request that this court, in conjunction with consideration of her opening brief, take judicial notice of 13 documents. Ten of the documents are pleadings involving three other cases, including the *Brooks* case, in which attorney Baugh participated, and in which Hales acted as a mediator, judge pro tempore, and/or referee. One document is the May 26, 2016 order in this case that is discussed in this opinion. And the remaining two documents are courthouse lists for 2017 and 2019. Susan's request for judicial notice filed January 12, 2012, is denied in its entirety. The May 26, 2016 order is already part of the appellate record. (See *Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 673-674, fn. 4.) As to the remaining documents, judicial notice is denied, inter alia, because they were not documents presented to, or considered by, the court below (see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3), and they are not relevant to the disposition of this appeal (see *People v. Curl* (2009) 46 Cal.4th 339, 360, fn. 16).

Susan filed another request on July 5, 2022, that this court take judicial notice of (1) a request for order that she filed in the court below on March 13, 2014, and (2) this court's docket in *Bassi v. Bassi*, H045571. The July 5, 2022 request for judicial notice is granted.

20

Susan's failure to challenge the denial of a motion to disqualify is not an impediment to her claim—she is precluded from challenging the Referee's actions by not timely raising her objections below. Lastly, we consider Susan's contention that the Referee issued orders and recommendations on matters that were beyond the scope of his appointment.

### 1. *Appointment of Referee*

On April 8, 2014, the court conducted a hearing concerning discovery issues and other matters. Both parties appeared and were represented by counsel. There was a stipulation between counsel, recited on the record by Robert's attorney, that Hales would be appointed referee and discovery referee, he would decide how his fees would be paid, and he would decide specific matters that were identified at the hearing. Robert, Susan, and her counsel specifically agreed to the stipulation for appointment as recited in the record.

On April 28, 2014, the court filed an order, pursuant to the April 8 stipulation, appointing Hales as referee "to hear and determine all future discovery motions and disputes, to oversee the allocation of fees and costs pursuant to [Family Code section] 2032[, subdivision] (b) and the issues stipulated as part of this Order. Mr. Hales will also have authority to determine the source and payment of his own fees."[23] The stipulation attached to the order, signed by Robert, Susan, and their respective counsel, provided that Hales was appointed referee under section 639 for "[d]iscovery, attorney's fees (including attorney's fees for referee) and case management." The stipulation was not signed by Hales.

---

[23] In the order, the court specifically referred certain pending matters to Hales, namely the request to convert a Chase checking account to a joint bank account (adding Susan's name); Robert's request for attorney fees incurred in connection a motion to quash, a discovery motion, and a motion to compel a vocational examination; and both parties' requests for attorney fees.

On June 25, 2014, the court filed a second order, pursuant to stipulation, appointing Hales as referee.[24] The stipulation, signed by the parties and their respective counsel but not signed by Hales, was attached to the order. The stipulation provided that the statutory authority for the appointment was under sections 638 and 639. It reflected that the parties intended that the scope of the appointment was limited to making findings of fact and orders limited to (1) Robert's request for attorney fees in connection with his motion to quash, (2) Robert's request for attorney fees in connection with a motion to compel discovery responses and for a vocational evaluation, (3) Robert's request for return of funds to a Charles Schwab account and attorney fees, (4) attorney fee requests made by either party in previously filed and pending requests for orders, and (5) discovery issues involved in previously filed and pending requests for orders. The stipulation contained a provision concerning grievances that included a mechanism for the removal of the referee upon noticed motion by either party.

### 2. Referee Disclosure Requirements

Upon his or her appointment, a referee is required to "certify in writing that he or she consents to serve as provided in the order of appointment and is aware of and will comply with applicable provisions of canon 6 of the [California] Code of Judicial Ethics and with the California Rules of Court," which certification must be filed with the court. (Rule 3.904(a)(1), (2); see also rule 3.924.) Additionally, a referee is required to make disclosures of matters required to be disclosed under canon 6D(5)(a) or 6D(5)(b) of the California Code of Judicial Ethics, and "[a]ny significant personal or professional relationship the referee has or has had with a party, attorney, or law firm in the current case, including the number and nature of any other proceedings in the past 24 months in

---

[24] Prior to the issuance of that second order concerning the appointment of the Referee, the court had, on May 20, 2014, in addressing an ex parte motion brought by Robert, referred matters concerning payments for obligations related to the Gilroy property to Hales for an expedited hearing. Susan's counsel encouraged the assignment of that matter to the Referee.

which the referee has been privately compensated by a party, attorney, law firm, or insurance company in the current case for any services. The disclosure must include privately compensated service as an attorney, expert witness, or consultant or as a judge, referee, arbitrator, mediator, settlement facilitator, or other alternative dispute resolution neutral." (Rule 3.904(b)(1), (2).)[25] (Hereafter, disclosures required under rules 3.904 and 3.924 are referred to as Referee Disclosures.)

It is undisputed that Hales did not submit the written disclosures required under rule 3.904. In July 2005, Susan sent a letter of complaint concerning Hales to the State Bar of California (State Bar). One of her complaints was that Hales had failed to provide a proper waiver of conflicts in the case. On May 9, 2016, a State Bar investigator advised Susan that Hales had responded to the complaint, and he had stated, inter alia, that prior to his appointment, he had "met with Robert Tennant [Susan's counsel] at his office, and at that time, disclosed to Mr. Tennant, the prior cases he had with Mr. Baugh [Robert's attorney]."

### 3. *Recommendations and Orders of Referee*

From the record before us, it appears that the Referee made 16 written recommendations and orders between May 28, 2014, and August 12, 2015. At least half of those recommendations and orders concerned only case administration matters. The

---

[25] Under canon 6D(5) of the California Code of Judicial Ethics, a referee "shall, from the time of notice and acceptance of appointment until termination of the appointment: [¶] (a) In all proceedings, disclose in writing or on the record information as required by law, or information that is reasonably relevant to the question of disqualification under Canon 6D(3), including personal or professional relationships known to the . . . referee . . . that he or she or his or her law firm has had with a party, lawyer, or law firm in the current proceeding, even though the . . . referee . . . concludes that there is no actual basis for disqualification; and [¶] (b) In all proceedings, disclose in writing or on the record membership of the . . . referee . . . in any organization that practices invidious discrimination on the basis of race, sex, gender, religion, national origin, ethnicity, or sexual orientation, except for membership in a religious organization."

remaining eight orders consisted of four orders dealing with the Gilroy property and its listing for sale; the entry of a protective order; an order advancing pendente lite attorney fees (Fam. Code, § 2030) of $50,000 to each party, denying Susan's request for sanctions, and ordering Susan to pay Robert attorney fees of $50,000 as sanctions (Fam. Code, § 271); an order finding that Susan had received and exclusively used dividend checks of $13,118 from an Australian company, South Pacific Seeds, and requiring that she pay one-half that amount to Robert forthwith; and an order addressing several requests by Susan (e.g., Baugh providing Susan with an accounting of disbursements from, and interest accrued in, his trust account, inspection of records of CSP and CSI, and predistribution of $25,000 to Susan from the family business).

### 4. *Withdrawal of Referee*

A hearing occurred on June 11, 2015, in which the court "[r]eluctantly" granted the Referee's motion to withdraw after his completion of work on any pending issues.

Hales continued to act as Referee after June 11, 2015. On August 4, 2015, the Referee submitted a proposed order concerning the sale of the Gilroy property in which he recommended that (a) the clerk sign an updated listing agreement as elisor because Susan refused to execute the agreement, (b) expenses recommended by the real estate broker Patty Filice to facilitate the sale be approved and split equally between the parties with Robert advancing the cost subject to Susan's reimbursement from her share of the sale proceeds, and (c) property disclosure procedures recommended by Filice be adopted. The proposed order by Hales was adopted by the court on August 12, 2015. On October 26, 2015, Hales filed his notice of withdrawal as Referee.

### 5. *Susan Did Not Challenge Denial of Disqualification Requests*

Robert contends on appeal that Susan submitted requests to disqualify Hales as Referee which were denied by the trial court. He asserts further that Susan did not challenge these unfavorable rulings by the required procedure of a petition for writ of mandate filed with the appellate court. Robert argues that because such mandamus

petition was her exclusive remedy, she is now procedurally barred from arguing on appeal that the court should have disqualified Hales.

### a.     Susan's Complaints and Disqualification Requests

The record shows numerous instances in which Susan expressed dissatisfaction with Hales as the appointed Referee and sought his removal. The court filings before us on these issues date back to at least September 4, 2014 (over one year before the Referee's ultimate withdrawal). Susan repeated her complaints about Hales in filings with the court on November 19, November 26, and December 23, 2014. In her December 23, 2014 "[f]inal hearing [b]rief," she alleged, inter alia, that Hales "was likely [prejudiced against her]," had exhibited the "appearance[] of bias" on numerous occasions, and had taken actions against her that were "unjust."

Susan continued to assert similar complaints about Hales in at least 25 court filings in 2015. Most of these pleadings (at least 17) included repeated requests from Susan that the court disqualify, terminate, or remove Hales as Referee.[26] For example, in one such filing on January 12, 2015, Susan submitted a 57-page list of matters she urged the court to decide; numerous such matters (approximately 90) were findings concerning Hales's alleged misconduct. Several of those requests were that the court disqualify, terminate, or remove Hales as Referee, and that the court declare his orders void.[27] In addition, as discussed, *post*, one of the complaints she raised was Hales's failure to make written Referee Disclosures at the time of his appointment, specifically concerning other court matters in which he and Robert's attorney, Baugh, were involved.

---

[26] According to the record before us, Susan submitted pleadings to the court in 2015 asserting complaints about Hales (and in many, requesting his disqualification, termination, or removal) on the following dates: January 2, 6, 12, 14, 21, and 28; March 20; April 1, 10, and 24; May 4, 11, 14, 18, and 29; June 10, 19, and 22; July 31; August 6, 11, 18; November 16; and December 3 and 8.

[27] The record shows that Susan also sent a number of e-mails directly to Hales that were extremely critical toward his role in the case. In one particularly caustic e-mail, Susan repeatedly instructed Hales, "[t]urn yourself in."

### b.  Disqualification Orders

The record reflects that the court issued *five* orders denying requests by Susan to disqualify Hales as Referee.

#### (1)  *November 19, 2014 Order*

On September 4, 2014, Susan sent a letter to the court in which she complained about the Referee's alleged bias.  At a hearing five days later, the court addressed various matters, including identifying the issues that would be decided by Hales.  It was brought to the court's attention that Susan had sought to remove both Hales as Referee and the court-appointed accountant, Butera.  The court denied without prejudice Susan's requests to remove Hales and Butera.  The formal order was filed November 19, 2014.

Susan did not file a petition for writ of mandate with the appellate court to challenge the November 19, 2014 order.

#### (2)  *June 12, 2015 Order*

On April 1, 2015, Susan filed a request for removal of Hales.  Susan stated:  "The court must determine, given an appearance of judicial impropriety related to Mr. Hales assignment, if it is in the best interest of this case, and the public trust, to remove him from this case as Special Master and Referee and strike all recommended orders and pleadings."  On May 4, Susan filed a pleading relating to an upcoming hearing for May 6, in which she charged that Hales, inter alia, had "[s]how[n] bias against [Susan] and her attorneys," had "[v]iolated the Judicial Code of Conduct," and had "[i]mpos[ed] the appearance of deceit on the parties."  She sought the removal of the Referee.

After a hearing on May 6, 2015, the court issued an order that was filed June 12, 2015.  The court ruled:  "The request to remove Mr. Hales is denied as not being ripe. The steps required by the court['']s order appointing Mr. Hales have not been complied with.  [Susan] will itemize her written objections by May 7, 2015 . . . and Mr. Hales will have 30 days to reply, and the rest of the procedure in the court['']s order will then be followed."

26

Susan did not file a petition for writ of mandate with the appellate court to challenge the June 12, 2015 order.

### (3) *June 29, 2015 Order*

After the May 6, 2015 hearing, Susan filed on May 14 an ex parte request for order (RFO) with a supporting declaration for an order removing Hales and striking his orders and recommendations. She stated that Hales should be "immediately disqualified for substantially material judicial misconduct." Susan followed this with a May 18 pleading requesting the Referee's disqualification and removal. And on June 10, Susan filed a third pleading requesting that the court disqualify Hales with a specific statutory reference concerning disqualification (§§ 170.1, 170.3).[28]

The court conducted a hearing on June 11, 2015. Susan reiterated that the Referee was biased against her and she could not receive a fair hearing. The court "reluctantly" granted Hales's request to withdraw as Referee. The court found, as recited in the formal order filed June 29, that "Mr. Hales has done a lot of work under very adverse circumstances. The Court makes a finding that Mr. Hales did not violate any conflict of interest or ethics rules. Mr. Hales will remain through Judge Towery's appointment, and his determination of any other issues that he deems are still pending." After the June 11 hearing, Susan filed objections and amended objections to the court's ruling on June 19 and June 22, respectively, and she reiterated that the court should disqualify the Referee.

Susan did not file a petition for writ of mandate with the appellate court to challenge the June 29, 2015 order.

### (4) *October 19, 2015 Order*

On July 31, 2015, Susan filed a declaration and hearing brief containing the caption, in part, "Disqualification of Referee." Susan sought findings that Hales, inter

---

[28] On June 11, 2015, the court ordered this pleading stricken because it contained profanity and material that was "totally and absolutely inappropriate in a public court document." The court ordered that the document nonetheless remain in the court file.

27

alia, had violated prior orders; had acted with bias against Susan; was guilty of judicial misconduct; had violated the "Judicial Code of Ethics"; and had "too close of an affiliation [with and] . . . protect[ed] the assignments of . . . Mr. Baugh"; Susan requested that all orders of the Referee be set aside and that Hales be disqualified. Susan asserted that she had "asked Mr. Hales to disqualify himself and pursuant to [section] 170.4, since he failed to respond, the court must consider him disqualified, not merely withdrawn." Susan filed a supplemental declaration on August 11 repeating her request that the Referee be disqualified, urging that "Mr. Hales [be] deemed disqualified under 170.1, 170. 3 effective, June 10, 2014, . . . and all orders or recommendations forward from that disqualification shall be stricken."

At a hearing on September 22, 2015 (with formal order filed October 19), the court denied Susan's motion to remove Hales as special master regarding the sale of the Gilroy property and further denied "[a]ny motions for removal of Mr. Hales for ex parte communication." The court found that these motions had been brought by Susan and were "matters that [had] been previously adjudicated and [that were] final."[29]

Susan did not file a petition for writ of mandate with the appellate court to challenge the October 19, 2015 order.

### (5) *December 4, 2015 Order*

On August 18, 2015, Susan's filed an ex parte RFO. (The court denied ex parte relief.) Susan requested that the court "disqualify Mr. Hales as Referee in this matter, for judicial misconduct" and that all orders and recommendations of the Referee be stricken.

The court conducted a hearing on November 18, 2015, on Susan's prior August 18 RFO. There was no appearance by Susan. The court described Susan's RFO as a second

---

[29] In the statement of decision filed approximately one year later (August 31, 2016), the court specifically referred to the September 22, 2015 order in support of its finding that Susan was a vexatious litigant, based on her having brought renewed motions on matters that had already been decided.

request for reconsideration of the court's prior order. The court denied Susan's RFO on the grounds that it was untimely and because no grounds for reconsideration were stated. In the formal order dated December 4, the court denied Susan's motion to disqualify Hales as being res judicata under prior court orders (including the October 19 order discussed, *ante*), and the court also denied the disqualification motion on the merits.

Susan did not file a petition for writ of mandate with the appellate court to challenge the December 4, 2015 order.

### c. Writ Relief Was Appellant's Exclusive Remedy

Section 170.3, subdivision (c) permits a party to file a verified objection to a judge presiding over a hearing: "If a judge who should disqualify himself or herself refuses or fails to do so, any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge. The statement shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." Although section 170.3 refers to "a judge," this word is expressly defined by statute to mean "judges of the superior courts, and court commissioners *and referees*." (§ 170.5, subd. (a), italics added.)

Subdivision (d) of the section 170.3 specifies that a decision regarding disqualification is reviewable *by a writ proceeding only*, and not by appeal. "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding. The petition for the writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification." (§ 170.3, subd. (d).) Thus, " 'a petition for writ of mandate is the *exclusive* method for obtaining review of a denial of a judicial qualification motion.' [Citation.]" (*People v. Freeman* (2010) 47 Cal.4th 993, 1000, original italics (*Freeman*).)

29

There are two policy reasons for the rule that a decision on a motion to disqualify a judge (or, here, a referee) is reviewable only through a writ proceeding. "First, it promotes judicial economy by eliminating the waste of time and money that might result if litigation were allowed to continue, only to be vacated later on appeal because the later rulings and judgment were declared void by virtue of a wrongly-denied disqualification motion. Second, it prevents a party from obtaining a windfall by waiting for the outcome of litigation, then challenging a disqualification only if the result were unfavorable. Therefore, section 170.3, subdivision (d) promotes fundamental fairness by ensuring that the parties receive a speedy appellate determination by way of writ of mandate. [Citation.]" (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1348-1349 (*Sears, Roebuck & Co.*).)

In this case, as discussed above, there were *five orders* denying Susan's request for the disqualification of Hales as Referee. Susan did not bring an appellate challenge by a petition for writ of mandate as to any of these orders.[30] Her claim in this appeal is that the judgment and all underlying orders must be reversed because "the judgment [is] founded on unlawful Hales' decisions, orders, and recommendations." This argument echoes Susan's repeated assertions below that, in addition to his being disqualified, the court should order that the Referee's orders and recommendations be stricken. The appeal therefore, as it is based upon the claim that the Referee's recommendations and orders were void and directly impacted the judgment, constitutes a challenge to the

---

[30] It might be argued that two of those orders—the November 19, 2014 order (denial without prejudice), and the June 12, 2015 order (denial because the request was not "ripe")—were not on the merits, and therefore Susan was not required under section 170.3, subdivision (d) to pursue a challenge to them in the appellate court by petition for writ of mandate. Even were this position to have merit, there were three orders denying Susan's request for disqualification of the Referee that were clearly on the merits for which her exclusive appellate challenge was through a petition for writ of mandate. (See *Freeman*, *supra*, 47 Cal.4th at p. 1000.)

30

correctness of the trial court's orders denying her requests for the disqualification of Hales.

Susan disputes Robert's arguments that (1) she had previously sought disqualification of Hales, (2) her requests were denied, and (3) she is barred because she did not exercise her exclusive remedy for challenging such denials by one or more petitions for writ of mandate. She argues in her reply brief that "[t]here was no disqualification decision. Susan never filed a proper or effective disqualification under Code of Civil Procedure § 170.3." Susan cites no legal authority in support of her contention that the orders denying her requests to disqualify Hales must be disregarded because her requests were not in a proper form. (See rule 8.204(a)(1)(B).) She has forfeited the contention. (*Ewald*, *supra*, 13 Cal.App.5th at p. 948.)

Susan's forfeiture of the argument notwithstanding, her position ignores the reality of what transpired below. As discussed, between January 2015 and October 26, 2015 (the date Hales filed his formal withdrawal), Susan filed *many* pleadings (at least 17) *repeatedly requesting* that the court disqualify, remove, and terminate Hales as Referee, and that it declare all of the Referee's recommendations and orders void. Many of her filings—including those that preceded, and were related to, the 2015 disqualification orders of June 12, June 29, October 19, and December 4—were in the form of verified RFO's or were captioned as "declarations." Some of Susan's pleadings invoked statutory provisions relating to judicial disqualification (i.e., §§ 170.1, 170.3, 170.4).[31] As a consequence of Susan's pleadings requesting that the court disqualify Hales, the court

---

[31] Additionally, in a July 28, 2015 e-mail to Hales—containing a subject line, "**Demand to Disqualify**"—Susan, after stating that she had "been asking [him] to disqualify [himself] since . . . August 6, 2014," stated that he was required to disqualify himself under section 170.1. (Original boldface.)

made direct orders denying those requests on June 12, June 29, October 19, and December 4, 2015.[32]

From our careful review of the voluminous record in this case, it is plain that, contrary to Susan's contention on appeal, there in fact *was* "a qualification decision" by the court below—in fact, there were at least five of them. And we reject her unsupported claim that her appeal is not barred by her failure to seek writ review challenging these disqualification orders because she "never filed a proper or effective disqualification under [section] 170.3." To hold otherwise would permit gamesmanship by litigants: A party dissatisfied with a "judge," i.e., a judge, court commissioner, or referee (see § 170.5, subd. (a)), could (1) present a procedurally defective disqualification request; (2) permit it to be heard and decided unfavorably on the merits; (3) seemingly accept the order by not filing a petition for writ of mandate that is the exclusive statutory means provided for challenging such an order; (4) allow the litigation to continue to its conclusion before the "judge"; and (5) if dissatisfied with the ultimate result, challenge belatedly the denial of the disqualification request through an appeal not authorized by statute. Allowing a litigant to proceed with an untimely and unauthorized appeal under these circumstances would be antithetical to a significant policy reason for making an order following a disqualification motion reviewable only by a writ proceeding: That is, the promotion of "judicial economy by eliminating the waste of time and money that might result if litigation were allowed to continue, only to be vacated later on appeal

---

[32] In the court's June 29, 2015 order (following a hearing on June 11), the court authorized Hales to withdraw as Referee at his request, following completion of work on any pending matters. Although the court did not make the express statement that it was denying Susan's request for disqualification, it is plain that the order included such denial. As a prelude to the June 11 hearing, Susan filed three pleadings (on May 14, May 18, and June 10) in which she sought an order disqualifying Hales as Referee. And after the June 11 hearing in which the court conditionally permitted Hales's withdrawal, Susan filed two objections to the ruling, reasserting her position that that the court should disqualify the Referee.

32

because the later rulings and judgment were declared void by virtue of a wrongly-denied disqualification motion." (*Sears, Roebuck & Co.*, *supra*, 131 Cal.App.4th at pp. 1348-1349.)

Susan's exclusive appellate remedy to challenge these disqualification orders was a petition for writ of mandate. (§ 170.3, subd. (d); see *Freeman*, *supra*, 47 Cal.4th at p. 1000.) Susan's challenge to the denial of her serial motions to disqualify the Referee "is not properly raised in this appeal." (*Roberts v. County of Los Angeles* (2009) 175 Cal.App.4th 474, 487.)[33]

Although an appellate court, in its discretion, may treat an appeal as a petition for writ of mandate, such discretion is "exercised only in extraordinary circumstances. [Citation.]" (*Sears, Roebuck & Co.*, *supra*, 131 Cal.App.4th at p. 1349.) No extraordinary circumstances are presented here. Susan had a clear obligation to seek relief from the denial of her disqualification requests by filing petitions for writ of mandate. (See *ibid.*) Further, "as a result of [Susan's] failure to seek writ relief, further proceedings were held and a final resolution has been long delayed, thereby defeating the policy of judicial economy." (*Ibid.*)

### 6. Disqualification Requests Included Referee Disclosures Issue

Susan contends that Hales failed to provide the required written Referee Disclosures concerning any conflicts of interest existing at the time of his appointment, and he therefore had no jurisdiction. She argues further that, because of this absence of

---

[33] We observe that Susan has demonstrated that she is familiar with the procedure of challenging the trial court's denial of a disqualification motion by petition for writ of mandate. She has filed in this court four separate petitions for writ of mandate—each of which was denied—challenging the trial court's denial or striking of her motions to disqualify Judge Towery, one of the judicial officers who presided over a number of hearings in this case. (See *Bassi v. Superior Court*, H044437 [writ petition from order, Feb. 22, 2017; *Bassi v. Superior Court*, H044613 [writ petition from order, Apr. 21, 2017]; *Bassi v. Superior Court*, H045018 [writ petition from order, Aug. 21, 2017]; *Bassi v. Superior Court,* H050671 [writ petition from order, Dec. 16, 2022].)

jurisdiction, the Referee's recommendations and orders were per se invalid, and the judgment entered below was "void." ~ She fails to cite legal authority for her position as required under rule 8.204(a)(1)(B). The argument is forfeited. (*Ewald*, *supra*, 13 Cal.App.5th at p. 948.) Moreover, even were the argument not forfeited, it is without merit.

It is clear from the record that Susan raised before the trial court *the specific issue* that she asserts on appeal: that because Hales failed to make written Referee Disclosures at the time of his appointment of other court matters in which he and Baugh were involved, he should have been disqualified, and his resulting recommendations and orders are void. The record shows that Susan made this nondisclosure objection at least 10 times prior to October 26, 2015, the date Hales filed his notice of withdrawal as Referee. In these objections, Susan typically referred to the Referee's disclosure obligations under rules 3.904 and 3.924 and under canon 6 of the California Code of Judicial Ethics.

Moreover, the record shows that in 2015, Susan was aware of the specific case in which Hales and Baugh allegedly participated, the *Brooks* case, that she asserts on appeal presented a clear conflict that required Hales's disqualification as Referee. And she specifically raised an objection below—in pleadings filed with the court and in direct communications with Hales—based upon the conflict arising from the participation of Hales and Baugh in the *Brooks* case.

Some of these pleadings—in which Susan referred to Hales's failure to make written Referee Disclosures and (in some instances) referred to the *Brooks* case—were filed in direct relationship to three of the court orders (discussed in detail, *ante*) denying Susan's request for disqualification. In summary:

> *June 29, 2015 Order.* Susan filed a pleading on May 18, in which she
> requested that Hales be disqualified and removed from the case, asserting he had
> not complied with "California's Judicial Code of Ethics." She also argued that "if

34

Mr. Hales cannot understand and follow the law, the court has an obligation to remove him and refer this issue to the County, as it may impact other cases ([l]ike the Brooks matter) as well." And in her June 10 pleading in which she requested disqualification under sections 170 and 170.3, Susan specifically referred to the Referee's failure to file the disclosure statement under rule 3.931. In its June 29, 2015 order, the court "reluctantly" granted Hales's request to withdraw as Referee after he had completed matters that were still pending before him, implicitly denying Susan's request for disqualification.

*October 19, 2015 Order.* On July 31, Susan filed a pleading seeking the Referee's disqualification in which she asked for findings that Hales, inter alia, had violated the "Judicial Code of Ethics." Susan also made specific reference to the *Brooks* case: "Mr. Hales specifically commented on Mr. Butera's involvement in another high conflict case, the Brooks matter, to which Mr. Hales was later assigned as Referee. (Mr. Hales has boosted [*sic*] about the gobs of money he makes in other such cases[.])" Susan repeated her disqualification request in an August 11 pleading, stating that the "Referee . . . has flagrantly violated California's Judical [*sic*] Code of Ethics." In its October 19, 2015 order, the court denied Susan's motion to remove Hales as special master regarding the sale of the Gilroy property and further denied "[a]ny motions for removal of Mr. Hales for ex parte communication," finding that Susan's motions were "matters that [had] been previously adjudicated and [that were] final."

*December 4, 2015 Order.* In Susan's August 18 ex parte RFO, she urged that Hales be disqualified "for judicial misconduct." In its December 4, 2015 order, the court denied Susan's motion to disqualify Hales as being res judicata under prior court orders (including the October 19, 2015 order), and also denied the motion on the merits.

Susan asserted in multiple pleadings, including those requesting the Referee's disqualification, that the failure of Hales to make the required Referee Disclosures rendered his recommendations and orders invalid. She specifically noted that Hales had not disclosed potential conflicts resulting from his involvement in other cases in which Robert's attorney, Baugh, also participated. One of those cases, known about by Susan and mentioned in her 2015 court filings, was the *Brooks* case. Thus, her objection to Hales's failure to make written Referee Disclosures, including disclosure of his involvement in the *Brooks* case, was included in her disqualification requests, which were denied by the court on three separate occasions. Susan's failure to file a petition for writ of mandate challenging the court's multiple orders (June 29, October 19, and December 4, 2015) denying her disqualification requests bars her appellate challenge founded on the failure to make Referee Disclosures. (§ 170.3, subd. (d); see *Freeman*, *supra*, 47 Cal.4th at p. 1000.)

### 7.     *Unasserted Disqualification Requests Were Forfeited*

As noted, in her reply brief, Susan argues that "[t]here was no disqualification decision. Susan never filed a proper or effective disqualification under Code of Civil Procedure § 170.3." In her view, she is free to raise on appeal the issue of Hales's failure to make the Referee Disclosures as a basis for her attacking his recommendations and orders, and, ultimately the judgment itself. For the reasons we have discussed, *ante*, Susan's argument lacks merit. However, even if we were to *assume*—contrary to what the record shows—that Susan did not seek to disqualify Hales due to his failure to make the Referee Disclosures (including disclosure of his involvement in the *Brooks* case), and the court did not deny disqualification, her position fails.

A party seeking to disqualify a judge (or referee) for cause under section 170.3, subdivision (c) must do so "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (§ 170.3, subd. (c).) "This strict promptness requirement is not to be taken lightly, as a failure to comply constitutes

36

forfeiture or an implied waiver of the disqualification." (*Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1337 (*Tri Counties Bank*).)  The requirement of a prompt filing of a disqualification request upon learning of the facts supporting it as provided in the statute is founded upon the principle that " ' "[i]t would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he [or she] is aware and thereby permitting the proceedings to go to a conclusion which he [or she] may acquiesce in, if favorable, and which he [or she] may avoid, if not." ' " (*People v. Scott* (1997) 15 Cal.4th 1188, 1207.)

As we have discussed in the preceding section, Susan was aware of, and objected to, the failure of Hales to make written Referee Disclosures prior to his filing of a notice of withdrawal on October 26, 2015.  Although Hales's omission should have been apparent to Susan shortly after the parties stipulated to his appointment as referee on April 28, 2014, the record demonstrates (based upon her written objections) that Susan knew of the omission by no later than May 3, 2015.  Likewise, as discussed, the record shows that Susan was specifically aware of the *Brooks* case by April 10, 2015, and knew by July 31, 2015, that Hales had been a participant in that case with Baugh.[34]

If—as Susan claims on appeal—Hales's failure to make the Referee Disclosures (including a disclosure concerning the *Brooks* case) was a ground for invalidating his recommendations and orders, and thus a basis for his disqualification, she was obligated to raise the matter at the earliest opportunity in 2015 while Hales was still serving as Referee.  Therefore—and assuming, arguendo, that she did not raise the matter in her disqualification requests—her failure to raise the objection at the time violated the principle that she bring the disqualification request "at the earliest practicable opportunity

---

[34] There are several references by Susan to the *Brooks* case prior to July 31, 2015, but it is unclear whether, at the time of the references, she was aware of Hales's involvement in that case.

after discovery of the facts constituting the ground for disqualification." (§ 170.3, subd. (c).) She has forfeited or impliedly waived the claim. (*Tri Counties Bank*, *supra*, 167 Cal.App.4th at p. 1337.)

### 8. *Scope of Referee Appointment Challenge*

Susan argues at some length that under the stipulation and order filed June 25, 2014, the Referee had a "limited appointment," and that many of Hales's recommendations and orders were on matters that exceeded the scope of that appointment. She contends further that she "never consented to a general reference."

Susan's analysis in support of her argument is incomplete. She has failed to identify the specific recommendations and orders she asserts were beyond the scope of the Referee's appointment, or to describe why they should not have been decided by him. We are not required to "develop [Susan's] arguments for [her]." (*Dills*, *supra*, 28 Cal.App.4th at p. 890, fn. 1.) Further, she has not provided citations to the record of these challenged orders, as required by rule 8.204(a)(1)(C). It is not our task to search the record to determine whether there is support for Susan's position. "We can simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]" (*In re S.C.*, *supra*, 138 Cal.App.4th at pp. 406-407.)

Additionally, Susan has not established that she raised this scope-of-appointment argument below. While our review of the voluminous record shows that Susan raised numerous objections to the Referee's recommendations and orders, including repeated arguments that they were void, we have not seen a contention in her objections below that Hales ruled on matters that were beyond the scope of his appointment. "An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is

38

*unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 (*Doers*), original italics.) Susan has forfeited on appeal her unpreserved claim that certain (unspecified) recommendations and orders of Hales were beyond the scope of his appointment. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

Moreover, Susan fails to articulate why any such improper rulings were material and prejudicial such that reversal of the judgment is required. Her argument fails.[35]

## C. Challenges to Orders Underlying the Judgment

In her appellate briefs, Susan does not assert a specific, focused challenge to any particular order entered prior to judgment. But because, in the Statement of Facts section of her opening brief, she appears to challenge three specific orders, we briefly address them here. Following that discussion, we address Susan's claim that the court committed prejudicial error by allegedly deferring consideration of two requests for attorney fees under Family Code section 2030 to the time of trial.

### 1. *Referee Order (January 15, 2015)*

Susan challenges the Referee's order of January 15, 2015. The Referee (1) ordered an advance of pendente lite attorney fees (Fam. Code, § 2030) of $50,000 to

---

[35] Susan advances another procedural challenge concerning the order appointing referee: The trial court failed to consider and make findings concerning Susan's ability to pay fees for the Referee. She asserts that this was required under section 639, subdivision (d)(6). She also notes that if a party is proceeding in forma pauperis, the party " 'shall be deemed by the court to have an economic inability to pay the referee's fees.' (. . . § 639, subd. (d)(6)(B).)" Susan has not shown that she objected below to the order appointing Referee on the basis that the court did not make an ability-to-pay finding under section 639. The claim is forfeited. (See *In re S.B.*, *supra*, 32 Cal.4th at p. 1293, fn. 2; *Doers*, *supra*, 23 Cal.3d at pp. 184-185, fn. 1.) Moreover, her assertion that she was presumptively unable to pay her share of the Referee's fees is without merit. At the time the order appointing the Referee was filed (June 14, 2014), Susan was represented by counsel.

each party; (2) denied Susan's request for attorney fees as sanctions against Robert (Fam. Code, § 271); and (3) ordered Susan to pay Robert attorney fees of $50,000 as sanctions (Fam. Code, § 271).

Section 906 provides in relevant part: "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had. . . . *The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken.*" (Italics added.) Plainly stated, "[t]he law of this state does not allow, on an appeal from a judgment, a review of any decision or order from which an appeal might previously have been taken. [Citations.]" (*Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 648.)

An appeal may be taken "[f]rom an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)." (§ 904.1, subd. (a)(12).) Included within this category of appealable orders is an order awarding attorney fees as sanctions under Family Code section 271. (See *In re Marriage of Freeman* (2005) 132 Cal.App.4th 1, 5 & fn. 4; see also *In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525 [order denying sanctions under Fam. Code., § 3027.1 appealable].)

Likewise, an order concerning a request for pendente lite attorney fees under Family Code section 2030 is directly appealable because it " 'possesses all the essential elements of a final judgment.' " (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368; see also *In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 468 [order

40

denying pendente lite fees is appealable].)  Thus, it was concluded by one appellate court that where the husband had "not appeal[ed] from [two] immediately appealable pendente lite attorney fees orders . . . , those orders became final and binding upon him," rendering his "purported appeals from the attorney fees orders" subject to dismissal.  (*In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119, fn. omitted (*Weiss*).)

The Referee's order of January 15, 2015, was a composite of three orders that were immediately appealable:  (1) an order under Family Code section 271 imposing sanctions, and (2) an order, also under Family Code section 271, denying sanctions (see § 904.1, subd. (a)(12); *In re Marriage of Freeman*, *supra*, 132 Cal.App.4th at p. 5 & fn. 4); and (3) an order awarding pendente lite attorney fees under Family Code section 2030 (see *Weiss*, *supra*, 42 Cal.App.4th at p. 119).  Any purported challenge by Susan of any of these orders within the January 15, 2015 order of the Referee may not be considered in this appeal; the interim orders were appealable, and thus cannot be challenged through an appeal from the judgment.  (See § 906.)

### 2.    *Order (May 26, 2016)*

Susan appears to challenge the court's May 26, 2016 order.  The court, after a four-day hearing, (1) denied Susan's request for attorney fees of $250,000 under Family Code section 2030; (2) denied Susan's request for attorney fees as sanctions (Fam. Code, § 271); and (3) granted Robert's request for attorney fees as sanctions (Fam. Code, § 271) in the amount of $120,000.

The May 26, 2016 order was a composite of three orders, each of which was immediately appealable:  (1) an order under Family Code section 271 imposing sanctions, and (2) an order, also under Family Code section 271, denying sanctions (see § 904.1, subd. (a)(12); *In re Marriage of Freeman*, *supra*, 132 Cal.App.4th at p. 5 & fn. 4); and (3) an order awarding pendente lite attorney fees under Family Code section 2030 (see *Weiss*, *supra*, 42 Cal.App.4th at p. 119).  Any purported challenge by

41

Susan to any of these orders contained in the May 26, 2016 order may not be considered in this appeal.  (See § 906.)[36]

### 3.    Order (August 31, 2016)

Susan appears to challenge the court's August 31, 2016 order.  In that order, which was accompanied by a lengthy statement of decision, the court. (1) granted Robert's motion to declare Susan a vexatious litigant and issued a prefiling order (see § 392.7), (2) granted Robert's request for a finding that Susan had violated the court's protective order, but denied without prejudice his motion to require, as sanctions, that Susan post a bond to secure her attorney's access to confidential documents, and (3) denied Susan's oral motion for pendente lite attorney fees (Fam. Code, § 2031).

Susan's argument appears to be that Hales, by recommending in January 2015 that Susan be declared a vexatious litigant, thereby improperly persuaded the judicial officer to make the order of August 31, 2016.  She relies on a letter sent by Hales on January 15, 2015, to the judge then presiding over the case.  In that letter, Hales detailed the controversy that had arisen from Susan's direct contacts with the court-appointed accountant, Butera, including Susan's e-mail requesting that he provide information about his errors and omissions insurance; her later filing of a complaint against Butera with the California Board of Accountancy; and (at the request of his insurance carrier) Butera's ultimate withdrawal from the case on September 24, 2014.  Hales noted in his letter to the court that, after he had issued an order in early September 2014 instructing that Susan make contact with Butera *only* to schedule a meeting, Susan had had 10 contacts with Butera over an 18-day period that were for purposes beyond setting up

---

[36] We note that Susan *did file an appeal* from this May 26, 2016 order on July 21, 2016.  The appeal, however, was ordered dismissed by this court due to Susan's failure to procure an appellate record.  (See *Bassi v. Bassi*, H044010.)

a meeting. Against this backdrop, Hales recommended that, as to requests involving Butera, Susan be declared a vexatious litigant and that a prefiling order be issued.[37]

To the extent that Susan may be challenging the court's August 31, 2016 order insofar as it denied her oral motion for pendente lite attorney fees, the claim cannot be considered in this appeal. (See *Weiss*, *supra*, 42 Cal.App.4th at p. 119.) Concerning any challenge by Susan to the remainder of the order, it fails. She presents no reasoned argument, with analysis and citations to the record, in support of a claim of error. (See *Smith*, *supra*, 30 Cal.4th at p. 616, fn. 8 [appellate court will not consider perfunctory contentions unsupported by any argument].) Further, the appellate record contains no transcript of the three days of proceedings that were the foundation for the court's detailed statement of decision and August 31, 2016 order. Her claim thus has no merit because she did not meet her burden of procuring an adequate record. (See *Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296.) Moreover, Susan presents no showing in support of her contention that the Referee's January 15, 2015 recommendation—that was not acted upon by the judicial officer then assigned to the case—influenced another judicial officer, after a three-day hearing conducted over one and one-half years later, to make a finding that Susan was a vexatious litigant. "We may not presume error. In this court, all intendments must be indulged to support the trial court's judgment. [Citation.]" (*In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575.)

Lastly, to the extent Susan challenges the court's order denying her oral request for pendente lite attorney fees under Family Code section 2031, an appellate challenge to

---

[37] On this court's own motion, judicial notice pursuant to Evidence Code section 459 is taken of this court's nonpublished opinion in a related case. (See *Bassi v. Butera* (Apr. 24, 2018, H042853) [nonpub. opn.].) The appeal involved a lawsuit by Susan against Butera for professional negligence that arose out of his role as the court-appointed accountant in the instant case. Butera appealed from an order denying his special motion to strike the complaint under the anti-SLAPP statute, section 425.16. This court reversed, concluding that Butera's anti-SLAPP motion should have been granted.

43

this immediately appealable order is precluded.  (See *Weiss*, *supra*, 42 Cal.App.4th at p. 119.)

Any claim of error by Susan concerning the August 31, 2016 order is without merit and/or is procedurally barred.

### 4.     *Alleged Deferral of Attorney Fees Requests*

Susan contends that the trial court committed prejudicial error when it allegedly denied a hearing on two requests that she made for attorney fees under Family Code section 2030 in the months leading up to the 11-day trial on reserved issues.  Although these specific requests and their alleged denials by the court are not identified in her argument, Susan, in the statement of facts section of her opening brief, asserts that her counsel "made application for attorneys' fees in October 2017 and January 2018.  Both times[,] the court postponed the fee requests to the time of trial."  Susan's claim of error has no merit.

First, the record does not show, as claimed by Susan, that "the trial court . . . , relying on Referee Hales, . . . flat refused, twice, to rule on [her] request for temporary attorneys' fees months before trial and indicated addressing the issue at the time of trial would be sufficient."  The record, which is incomplete, reflects the following chronology:

On <u>October 24, 2017</u>, Susan, through counsel, filed a responsive declaration in anticipation of a hearing set for November 6, 2017, in which she (1) requested a continuance of the hearing on a determination of the date of the parties' separation (separation date hearing), (2) indicated that she did not consent to the relief requested by Robert, and (3) requested that she "be awarded reasonable attorney fees and costs from [Robert] or as an advance to [Susan] of her 1/2 interest in her community estate in CSP . . . or [CSI]."

On <u>November 6, 2017</u> (the date of the separation date hearing), Susan, through counsel filed an ex parte RFO seeking an emergency order prohibiting

44

Robert from paying himself bonuses for 2017 and 2018, and other orders, including an order requiring Robert to pay Susan $361,000 in attorney fees as sanctions (Fam. Code, § 271), and an order that Robert advance "a reasonable amount of cash" to Susan from CSP for attorney fees (Fam. Code, §§ 2030, 2032, subd. (d)). The court did not issue any temporary orders or set a hearing on the ex parte RFO. Rather, it indicated: "Issues reserved to trial unless previously adjudicated by Court Orders."

On November 6, 2017, the court commenced the separation date hearing, which took place over three court days. Both parties were represented by counsel. The court denied Susan's continuance request. After hearing testimony, receiving documentary evidence, and hearing argument, the case was submitted. The clerk's minutes reflect (immediately before noting adjournment) the following: "The issue of the recent Ex Parte is raised by the Respondent/Counsel and it is addressed by the Court as recited on the record."

On January 18, 2018, Susan, through counsel, filed an RFO in which she sought an order awarding her attorney fees of $520,000 as an "advancement of a reasonable amount of cash . . . from the retained earnings of [CSI and] CSP . . . to pay past and present litigation expenses" (Fam. Code, §§ 2030, 2032, subd. (d)), as well as an order that Robert pay Susan attorney fees of $200,000 as sanctions (Fam. Code, § 271). The RFO was set for hearing on May 21, 2018, the day that the trial commenced.

Susan did not request a reporter's transcript for the separation date hearing that occurred on November 6 through 8, 2017. We therefore do not know what was argued by counsel or what comments the court made at the conclusion of the hearing concerning Susan's "recent [November 6, 2027] Ex Parte . . . as recited on the record." And insofar as Susan contends that "the court postponed the [January 2018] fee request[] to the time

45

of trial," there is no support for this assertion. All that appears in the record is that Susan filed an RFO on January 18, 2018, and that the hearing date typed on the pleading was May 21, 2018. There is nothing indicating that a judicial officer selected this date and thereby "postponed the fee request[] to the time of trial."

Susan claims that the trial court abused its discretion by not setting for hearing her RFOs, and deferring them until the day of trial. As appellant, she has the burden of presenting an adequate record. Her failure to do so here requires that the issue be resolved against her. (*Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296; see also *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 ["absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion"].)

Susan's reliance upon *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213 (*Hatch*) is misplaced. There, after being presented with a request for pendente lite attorney fees by the wife, a homemaker who had not been employed outside the home for 10 years (*id.* at p. 1216), the trial judge denied the request out-of-hand, stating that he " 'never grant[ed] attorney fees around here, or virtually never' " (*id.* at p. 1217). The appellate court reversed, finding that the trial court had failed to properly exercise its discretion; it reasoned that "while the court has considerable latitude in fashioning or denying a pendente lite fee award its decision must reflect an exercise of discretion and a consideration of the appropriate factors. [Citations.]" (*Id.* at p. 1219.)

Unlike in *Hatch*, *supra*, 169 Cal.App.3d 1213, here there was no outright denial of a request for attorney fees request. At most, the court, as to Susan's November 6, 2017 RFO—and for reasons not disclosed by the record because of Susan's failure to procure a reporter's transcript—deferred setting a hearing on the matter until trial. And as to the January 18, 2018 RFO, there is no showing that a judicial officer deferred a hearing of the request. And, unlike *Hatch*, where there were no earlier requests for pendente lite

attorney fees made by the parties, here, there were several such earlier requests by Susan, as evidenced by the Referee's order of January 17, 2015,[38] the May 26, 2016 order of by a judicial officer after a four-day hearing, and the order of August 31, 2016, by another judicial officer after a three-day hearing. *Hatch* does not support Susan's claim of error.[39]

Second, Susan has not shown—or even made an argument in support of— prejudice that resulted from any claimed error in the alleged deferral of a hearing on her requests for pendente lite fees. The California Constitution, "article VI, section 13 generally 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.' [Citation.]" (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) This requires a showing that the error constituted "a miscarriage of justice." (Cal. Const., art. VI, § 13.) " ' "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' [Citation.]" (*Pool v. City*

---

[38] Contrary to the assertion in Susan's opening brief that "Hales denied [Susan] attorneys' fees while granting fees for [Robert]," the Referee, in fact granted to *each party* pendente lite attorney fees of $50,000 in his order of January 17, 2015.

[39] After briefing was completed and shortly before oral argument, Susan's counsel, pursuant to rule 8.254, advised this court of a recent case, *In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 38 (*Knox*), that he believes offers support for the claimed error concerning the court's alleged deferral of Susan's requests for attorney fees. In *Knox*, the wife had made a request for attorney fees approximately one year before the ultimate trial, which, the appellate court concluded, "triggered the family court's mandatory obligation to address the issue of pendente lite attorney fees." (*Id.* at p. 38.) The *Knox* court held that, "[a]t a minimum," the trial court should have addressed the wife's request when the trial commenced a year later and she informed the court that she could not afford trial counsel. (*Ibid.*) Under these circumstances, the appellate court concluded that "the court violated its statutory obligation when it failed to address and decide [the wife's] request for pendente lite attorney fees with reasonable promptness." (*Ibid.*) Here, there were at least *three prior occasions* before Susan's filing of her RFO on November 6, 2017, that the trial court considered and ruled upon Susan's request for pendente lite fees. *Knox* does not support Susan's appellate claim.

47

*of Oakland* (1986) 42 Cal.3d 1051, 1069.)  It is appellant's burden to show that the trial court's error was prejudicial.  (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308.)

There is no showing of prejudice.  Susan was represented by counsel continuously from the date of the first RFO she identifies in her claim of error (November 6, 2017) through the time of trial and entry of judgment on August 28, 2018.  Indeed, between October 2, 2017, and the entry of judgment, her counsel appeared on her behalf at 10 hearings, and at the 11-day trial.  And between October 2017 and the entry of judgment, Susan's attorney filed at least 24 pleadings on her behalf.[40]  Susan's assertion that the court abused its discretion through its alleged deferral of her November 2017 and January 2018 attorney fee requests is not supported by the appellate record.  In any event, there is no showing of prejudice.  The claim of error fails.

### D.     Challenge to the Judgment

As the California Supreme Court has explained:  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations.]"  (*Jameson*, *supra*, 5 Cal.5th at pp. 608-609, citing and quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  As part of this principle, there is a presumption "the record has sufficient evidence to sustain the trial court's findings of fact.  [Citation.]"  (*Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125.)

---

[40] Although the court's award of attorney fees to Susan at trial was $50,000, her fees and costs request for the period of September 2017 to May 2018 were over $240,000.

48

The judgment was entered on August 28, 2018, after an 11-day trial.  As described, *ante*, the court decided various property, reimbursement, spousal support, attorney fees, and sanctions issues.  Susan does not present a challenge to any specific matters discussed and decided by the court in the judgment, which was supported by a detailed statement of decision.  Susan does not challenge the sufficiency of the evidence supporting the judgment.  (See *Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617 [where appellant does not challenge sufficiency of the evidence supporting the judgment, the appellate court is bound by the facts found by the trial court in its statement of decision].)  Instead, her contention is simply that the judgment must be reversed because it was based upon the orders and recommendations of the Referee, which she contends were unlawful.  This generalized attack fails.  (See *Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1018 [perfunctory arguments in appellate briefs will be deemed by the appellate court to be abandoned].)  Moreover, since Susan has failed to procure a transcript from the 11-day trial that resulted in the judgment, any appellate challenge to the judgment must be resolved against her.  (*Maria P.*, *supra*, 43 Cal.3d at pp. 1295-1296; see also *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412 ["[w]e cannot presume error from an incomplete record"].)

### III.    DISPOSITION

The judgment of August 28, 2018, is affirmed.

Respondent Robert Bassi is awarded his costs of suit on appeal.

49

BAMATTRE-MANOUKIAN, ACTING P.J.

_____

DANNER, J.

_____

WILSON, J.

*Bassi v. Bassi*
**H046284**